## Case No. 15,711.

### UNITED STATES v. MALEBRAN.

[1 Brunner, Col. Cas. 426;[1] 5 City H. Rec. 122.]

Circuit Court, D. New York. 1820.

SLAVE TRADE—WHAT INDICTABLE AS—STATUTORY OFFENSE.

1. It is an indictable offense, under the act of congress, to fit, equip, load, or otherwise prepare a vessel in the United States for the purpose of procuring and transporting slaves from a foreign place to any other place.

2. Where a punishment by imprisonment is provided by statute for a public offense, but no mode provided for securing such punishment, it is intended that an indictment will lie for such offense.

The defendant, a foreigner, and resident in this city, was indicted under the act of congress, of 1818 (1 Sess. 15th Cong. p. 81 [3 Stat. 450]), which act is, in effect, as follows: " That no citizen of the United States, or any other person, shall, as master, factor, or owner, build, fit, equip, load, or otherwise prepare, any ship or vessel, in any port or place

within the jurisdiction of the United States, nor cause any such ship or vessel to sail from any port or place whatsoever, within the jurisdiction of the same, for the purpose of procuring any negro, mulatto, or person of color, from any foreign kingdom, place, or country, to be transported to any port or place whatsoever, to be held, sold, or otherwise disposed of as slaves, or to be held to service or labor," etc. By the residue of this section, such vessel, her tackle, etc., is declared to be forfeited, one half to the United States, and the other half to the person suing for such forfeiture. "That every person, etc., so building, fitting, equipping, loading, or otherwise preparing, or sending away, or causing any of the acts aforesaid to be done, with intent to employ such ship or vessel, in such trade or business, after the passing of this act, contrary to the true intent and meaning thereof, or who shall, in any wise be aiding or abetting therein, shall severally, on conviction thereof, by due course of law, forfeit and pay a sum not exceeding five thousand dollars, nor less than one thousand dollars, one moiety to the use of the United States, and the other to the use of the person or persons who shall sue for such forfeiture, and prosecute the same to effect, and shall moreover be imprisoned for a term not exceeding seven years, nor less than three years." The indictment contained twenty-eight counts. The first count alleged that the defendant, being a resident within the United States, on, etc., at the port of New York, did fit, equip, and load a certain vessel, etc., with intent to employ said vessel, for the purpose of procuring negroes from a foreign country, to the jurors unknown, to be transported to a place, to the jurors unknown, to be held as slaves. The several other counts varied from the first, in relation to the description of persons to be transported, and in a variety of other particulars arising from the words of the act; but in all the counts, the foreign country from which the negroes were to be transported, and that to which they were to be transported, were alleged to be to the jurors unknown.

Tillotson & Bunner, for prosecution.
Hoffman, Emmet & Wells, for defendant.

Tillotson, in opening the case to the jury, stated that he expected to show the agency of the defendant in equipping and loading this vessel in this port, to be employed in the slave trade on the coast of Africa, by his own confession.

For this purpose Silas H. Stringham was introduced as a witness, on behalf of the prosecution, who testified that in April last, being a lieutenant on board the Cyane sloop of war, he boarded the schooner Science, at Cape Mount, on the coast of Africa, and found on board two several letters, written in French, by the defendant; the one dated in this city, on the 31st of December, 1819, directed to Francisco Mathieu; and the other,

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

on the 1st of January, 1820, to Capt. Adolphus La Cost. It appeared from the translation of this last mentioned letter which, with the other, was read in evidence, that it was a letter of instructions to the captain, in reference to an agreement previously made, directing him to proceed to Porto Rico, where the vessel was to be changed into Spanish; and after procuring shackles, handcuffs, etc., to proceed on the contemplated voyage. Another person, at Porto Rico, was to assume command of the vessel. He was to be the captain on paper; but La Cost, the real captain, who was to receive further directions from the brother of the defendant, Don Pedro Malebran, at Trinity De Cuba. To this place the merchandise, to be obtained on the voyage, was to be carried; and the letter states the agreement between the defendant and La Cost to be that the latter was to receive a specific sum per head; but the word "slaves" was not mentioned.

It was then proved by James B. Leonard and Joshua Phillips, clerks at the custom-house, that on the 31st of December, 1819, the Science cleared from this port for Porto Rico.

Stringham, on being again called, testified that he found on board the Science fifty pair of irons, some of which were shackles, and some handcuffs; and he also found muskets, tobacco, and calicoes, the usual cargo for the slave trade.

Tillotson having rested the prosecution, the counsel for the defendant raised two objections to the prosecution under this indictment: (1) This is not made an indictable offense by the statute upon which the indictment is founded. The remedy, by imprisonment, might have been effected on an information. (2) It is alleged in all the counts in this indictment that the place where the negroes were to be procured, and that to which they were to be transported, were to the jurors unknown. It appears from the proof that the place where they were to be procured was at Cape Mount, on the coast of Africa, and that to which they were to be transported was Trinity De Cuba. Both these places must, therefore, have been known to the grand jury; and therefore the indictment cannot be maintained. There is no principle in criminal law better settled than this, that if a person is indicted for stealing goods of a person to the jurors unknown, and it appears, in proof, that the person to whom the goods belonged was known, or, upon due inquiry, might have been known, that the indictment cannot be supported. 2 Hawk. P. C. 330; 1 Chit. Cr. Plead. p. 213; 2 East, P. C. p. 651; 1 Starkie, pp. 75, 175; Bac. Abr. tit. "Indictment." G; Rex v. Walker, 3 Camp. 264. In principle there is no difference between the cases. There is as much reason why the places from which, and to which, these slaves were to be transported, if known to the grand jury, should be alleged, as that the name of the person from whom goods are stolen, if

known, should be stated. An indictment should state things known to a common certainty, that the party may be the better prepared for his defense.

The counsel for the prosecution argued, on the first objection raised, that as the act of 1794 [1 Stat. 347], prohibiting the equipment of any vessel within the jurisdiction of the United States, to be employed in the slave trade, gave no public remedy for the offense, and as the one upon which this indictment was founded gave a remedy to the public by imprisonment, in express terms, that it was intended that the means by which that remedy was to be effected, should be by indictment. The court would have no power, under a conviction in a qui tam action to imprison the party; and this is the only mode of proceeding prescribed in the act. With regard to the second objection it was argued that the gravamen of the offense, which the statute was enacted to prevent, was the equipment of a vessel for the purpose of procuring slaves; and neither the place where they were to be procured, nor that to which they were to be transported, entered into the essence of the offense. And it would have been sufficient, in relation to the places, to have used the precise words of the act. The cases, therefore, cited on the opposite side, do not apply. Stealing goods of A. is a specific offence; and the owner's name, if known, is essential.

Stringham, on being again called by the judge, was asked whether he stated before the grand jury, that he took the Science on the coast of Africa, and to this inquiry he answered in the affirmative.

The judge pronounced his decision on the first objection raised, that, as the act upon which the indictment was founded gave a public remedy by imprisonment, but prescribed no particular mode of proceeding, in express terms, by which the remedy was to be effected, the legislature must have intended it should be by indictment.

With regard to the other objection, he stated that there was nothing better settled than that an offense, both as regards time, person, and place, should be laid in an indictment with sufficient certainty. It was as important for the defendant to know both the place from which he was charged with having procured these slaves, and that where they were to be transported, as the place where the vessel was equipped. These things were known to the grand jury, and should not have been dispensed with on the record.

For this uncertainty in the indictment, the judge advised the jury to acquit the defendant, and he was acquitted.

Tillotson moved that the defendant be laid under a recognizance to appear at the next term, to answer for this offense.

His counsel opposed this motion, on the ground that if again indicted, he would be entitled to his plea of autrefois acquit; and to this point they cited 1 Starkie, 175.

The judge granted the motion, and the defendant was bound over for his appearance at the next term.